Affirmed and Opinion filed November 25, 2008








Affirmed and Opinion filed November 25, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00103-CV

____________

 

LEONARD A. CRUSE AND CRUSE AND
ASSOCIATES, P.C., Appellants

 

V.

 

JOHN M. O=QUINN AND JOHN M. O=QUINN & ASSOCIATES, L.L.P., Appellees

 



 

On Appeal from the 212th
District Court

Galveston County, Texas

Trial Court Cause No. 06CV0340

 



 

O P I N I O N








In this accelerated, interlocutory appeal, appellants
Leonard A. Cruse and Cruse and Associates, P.C. (collectively, ACruse@), appeal the
trial court=s grant of appellees= motion for
partial summary judgment as to Cruse=s claims arising
out of a fee-sharing agreement (AFSA@).  In their
motion, appellees, John M. O=Quinn and John M. O=Quinn &
Associates, L.L.P. (collectively, AO=Quinn@) asserted the
affirmative defense that the FSA was illegal and void because Cruse was
prohibited by Texas law from recovering fees under the FSA on cases that were
not settled or otherwise finally resolved before Leonard Cruse was suspended
from the practice of law and, ultimately, disbarred.  Cruse contends that (1) O=Quinn failed to
satisfy its summary-judgment burden to prove its affirmative defense, (2) Cruse
presented evidence raising a genuine issue of material fact precluding summary
judgment, and (3) the trial court misapplied the summary-judgment rules and
standards.  We affirm.

Factual
and Procedural Background

On April 9, 2004, attorney Leonard Cruse and his law firm,
Cruse and Associates, P.C. (the ACruse law firm@), entered into
the FSA with the law firm of John M. O=Quinn &
Associates, L.L.P. (the AO=Quinn law firm@).  Under the FSA,
the parties agreed to provide joint representation and to share legal fees
earned on certain of Cruse=s cases pending on the effective date of
the FSA, as well as on cases Cruse later acquired that he referred to the O=Quinn law firm and
that met certain specifications.[1] 
Each case was to be classified based on the amount in controversy, the venue,
and the origin of the case.  The duties of each party and the division of fees
were determined by a case=s classification. 

The FSA provided that Athe parties intend
at all times to comply with Rule 1.04 of the Texas Disciplinary Rules of
Professional Conduct (hereinafter ADR 1.04@).@  Further,
regardless of a case=s classification or the duties assigned
based on that classification, each party expressly agreed to assume joint
responsibility for the representation Aas provided in DR
1.04.@








The FSA also provided that it would terminate upon the
occurrence of any one of several events, including Athe disability or
inability of Cruse to legally practice law in the State of Texas.@  It further
provided that, in the event of termination, pending cases would continue to be
subject to the FSA until they were concluded and all fees and expenses were
paid, although Cruse would receive a lesser percentage in some cases:

B.  Once the Agreement terminates
all future cases thereafter introduced to and acquired by Cruse shall not
be subject to this Agreement; provided however, that notwithstanding anything
to the contrary contained herein the Cases that were subject to the Agreement
as of the effective date of termination shall continue to be subject to the
Agreement until the Cases are concluded and all fees and expenses are accounted
for and paid.

C.  If the Agreement is terminated
because of the death or disability of Cruse or the inability of Cruse to
legally practice law, all of the Cases filed in Galveston County (i.e.
the AG@ type Cases) shall
be treated for the purposes of the division of fees as though they were ANG@ type Cases. . . .[2]

Just over a year after executing the FSA, on May 19, 2005,
Leonard Cruse was suspended from the practice of law.  On June 10, 2005, Mr.
Cruse was disbarred.  

In 2006, Leonard Cruse filed suit against John O=Quinn
individually, seeking an accounting of referral fees and expenses allegedly due
under the FSA, and alleging claims for breach of contract, fraudulent
inducement, unjust enrichment, and negligence.  Mr. Cruse later amended his
petition to add the O=Quinn law firm as a defendant.  In a
second amended petition, the Cruse law firm was added as a plaintiff, and the
plaintiffs added an allegation of alter ego and a claim for punitive damages to
the claims previously asserted.  O=Quinn answered,
asserting general denials and numerous affirmative defenses, including a claim
that Cruse=s claims under the FSA were barred by the doctrine of
illegality and were void as against the public policy of Texas.[3] 









In 2007, O=Quinn filed a motion for partial summary
judgment as to Cruse=s claims under the FSA.  Several months later,
O=Quinn also filed a
motion to abate the proceedings as to the Cruse law firm on the grounds that
its corporate existence had been forfeited for failure to pay franchise taxes.[4] 
The trial court heard oral argument on O=Quinn=s motions, and on
January 4, 2008, signed an order granting O=Quinn=s motion to abate,
ordering that the case be abated as to the Cruse law firm until April 14, 2008,
at which time the Cruse law firm=s pleadings would
be dismissed if the firm was not in good standing.  The trial court also signed
a separate order granting O=Quinn=s motion for
partial summary judgment on Cruse=s claims under the
FSA.  The court further ordered that this order met the requirements for an
appealable, interlocutory order pursuant to Texas Civil Practice and Remedies
Code section 51.014(d).  See Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(d) (Vernon
2008).  This appeal followed.

Analysis
of Cruse=s Summary Judgment Issues

Cruse contends generally that the trial court erred in
granting summary judgment, and specifically argues that (1) O=Quinn failed to
satisfy its summary-judgment burden to prove its affirmative defense that the
FSA was illegal and void as against Texas public policy, (2) Cruse presented
evidence raising a genuine issue of material fact precluding summary judgment,
and (3) the trial court misapplied the summary-judgment rules and standards. 
However, before we reach Cruse=s issues, we address O=Quinn=s contention in
its appellate brief that the Cruse law firm is not a Texas corporation in good
standing and is therefore not entitled to seek appellate relief.  








1.       Is the
Cruse law firm barred from appealing the trial court=s judgment?

As a threshold matter, O=Quinn contends
that the forfeiture of the Cruse law firm=s corporate
charter has stripped it of its right to bring this appeal.  See Tex.
Tax. Code Ann. ' 171.252 (Vernon 2008) (providing that if
the corporate privileges of a corporation are forfeited under this subchapter, Athe corporation
shall be denied the right to sue or defend in a court of this state.@).  Cruse does not
respond to this contention, and nothing in the record reflects that the Cruse
law firm=s charter has been
revived.  And, given that Leonard Cruse is the sole owner of the law firm and
he has been disbarred, it is unlikely that the corporation could be revived or
its corporate privileges reinstated during the pendency of this appeal.

However, in Vanscot Concrete Co. v. Bailey, the
Texas Supreme Court held that a corporation that had ceased to exist could
nevertheless appeal a trial court=s judgment against
it.  See 853 S.W.2d 525, 526B27 (Tex. 1993)
(per curiam).  The court expressly disagreed with the court of appeals=s dismissal of
Vanscot Concrete=s appeal on the grounds that a nonexisting
appellant cannot appeal, explaining that Acorporations have
the same right to have judgments against them revised by the appellate courts
as have persons, and that even extinguished corporations are entitled to a
hearing before the appellate courts.@  Id. at
526 (citing Tex. Trunk Co. v. Jackson, 85 Tex. 605, 22 S.W. 1030, 1032
(1893)).  Although Vanscot Concrete was a defendant appealing an adverse
judgment against it, rather than a plaintiff appealing a summary judgment
granted in favor of a defendant, and the specific Tax Code provision O=Quinn cites was
not at issue, we conclude that the outcome should be no different here.  As the
Court broadly stated, Athe reasoning for allowing a corporation
which has ceased to exist to prosecute an appeal is applicable in any
circumstance.@  Id.  








Further, even the cases O=Quinn cites in
support of its argument recognize that Tax Code section 171.252 does not
prevent a corporation that has forfeited its corporate privileges from
defending claims against it.  See Mello v. A.M.F. Inc., 7 S.W.3d 329
(Tex. App.CBeaumont 1999, pet. denied) (stating that, despite the
clear language of section 171.252, Athe statute has
historically been limited to prohibit defendants from bringing cross actions,
not from merely defending lawsuits); Hardwick v. Austin Gallery of Oriental
Rugs, Inc., 779 S.W.2d 438, 441 (Tex. App.CAustin 1989, writ
denied), superseded on other grounds by statute as stated in Bair Chase
Prop. Co., L.L.C. v. S & K Dev. Co., Inc., 260 S.W.3d 133 (Tex. App.CAustin 2008, pet.
filed) (rejecting contention that section 171.252 is jurisdictional and further
noting that a corporate defendant that has failed to pay franchise taxes may
nevertheless set up purely passive defenses, its answer may not be stricken, and
the corporate defendant may offer evidence that negates a plaintiff=s claim).  Here,
although the Cruse law firm was a plaintiff below, in the procedural posture
before us, it is not seeking affirmative relief.  Instead, it is appealing a
trial court=s grant of partial summary judgment against it, much
like Vanscot Concrete sought to appeal an adverse judgment following a jury
trial.  

In this situation, we are guided by the Texas Supreme Court=s reasoning in Vanscot
Concrete that Aeven extinguished corporations are
entitled to a hearing before the appellate courts.@  See 853
S.W.2d at 526.  We will therefore address the merits of the Cruse law firm=s appeal.

2.       Standard
of review.








We review the trial court=s grant of summary
judgment de novo.  Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150,
156B57 (Tex. 2004). 
To prevail on a traditional motion for summary judgment, the movant must show
that there is no genuine issue as to any material fact and that it is entitled
to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop.
Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985); Aguirre v. Vasquez, 225
S.W.3d 744, 750 (Tex. App.CHouston [14th Dist.] 2007, no pet.).  A
defendant moving for summary judgment must conclusively negate at least one
essential element of each of the plaintiff=s causes of action
or conclusively establish each element of an affirmative defense.  Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997); Shirvanian
v. DeFrates, 161 S.W.3d 102, 106 (Tex. App.CHouston [14th
Dist.] 2004, pet. denied).  We take as true all evidence favorable to the
non-movant, and we indulge every reasonable inference and resolve any doubts in
the non-movant=s favor.  Joe, 145 S.W.3d at 157; Aguirre,
225 S.W.3d at 750.  We review a summary judgment for evidence that would enable
reasonable and fair-minded jurors to differ in their conclusions.  Wal-Mart
Stores, Inc. v. Spates, 186 S.W.3d 566, 568 (Tex. 2006) (per curiam)
(citing City of Keller v. Wilson, 168 S.W.3d 802, 822B23 (Tex. 2005)).

3.       Did the
trial court err in granting partial summary judgment in favor of O=Quinn?

Turning to the merits of Cruse=s appeal, we
address Cruse=s contention that the trial court erred in granting O=Quinn=s motion for
partial summary judgment, and the specific arguments raised in his brief.  

a.       O=Quinn demonstrated
that the FSA was illegal and void.

First, Cruse contends that O=Quinn failed to
demonstrate as a matter of law that the FSACwhich O=Quinn draftedCwas illegal and
void as contrary to public policy.  Therefore, Cruse maintains, the burden
never shifted to it to raise a fact issue.  We disagree.

In the motion for partial summary judgment, O=Quinn pointed out
that, under the FSA, the parties agreed to share professional fees and expenses
on certain cases in accordance with DR 1.04, with each party assuming joint
responsibility for the representation.  Because the FSA was conditioned
expressly upon Leonard Cruse and the Cruse law firm maintaining their
respective capacities to practice law in Texas, O=Quinn contended
that Cruse could not legally collect any fees due under the FSA on any cases
that were not settled or that were otherwise unresolved until after Leonard
Cruse was suspended and then disbarred.  








To support this contention, O=Quinn primarily
relied upon the precedent of Royden v. Ardoin, 160 Tex. 338, 331 S.W.2d
206 (1960), and Lee v. Cherry, 812 S.W.2d 361 (Tex. App.CHouston [14th
Dist.] 1991, writ denied).  In Royden, the Texas Supreme Court held that
when an attorneyCprior to the completion of his
contingent-fee contractCis disbarred or suspended, he is not
entitled to collect either on the contract or in quantum meruit for the
services, if any, that have been rendered.  331 S.W.2d at 209.  The court held
that an attorney=s disbarment or suspension Ais considered
tantamount to and to have the same effect as a voluntary abandonment, for the
attorney by knowingly and willfully practicing such a course of conduct that
would lead to the termination of his right to practice, renders it impossible
to complete the work that he engaged to perform.@  Id.  In Lee
v. Cherry, this court held that voluntary abandonment only applies to those
situations in which the attorney has not completed the legal services prior to
disbarment.  See 812 S.W.2d at 363.  Because Lee, whose only involvement
was to refer the case to another lawyer, had completed all of his duties under
the referral-fee contract prior to surrendering his law license, the court
reversed the summary judgment granted on Cherry=s affirmative
defense.  Id. at 363B64.  

On appeal, Cruse contends that, under Lee and A.W.
Wright & Associates, P.C. v. Glover, Anderson, Chandler & Uzick, L.L.P.,
a fee-sharing agreement is not illegal or void, and an attorney may share in
contingency fees with a suspended or disbarred attorney, when (1) the
fee-sharing agreement was made before suspension/disbarment, and (2) the
suspended/disbarred attorney fully performed the work required of him or her
before the suspension/disbarment occurred.  See Lee, 812 S.W.2d at 363B64; A.W. Wright
& Assocs., 993 S.W.2d 466, 468B69 (Tex. App.CHouston [14th
Dist.] 1999, pet. denied).  Cruse maintains that he has satisfied the first
requirement because it is undisputed that the parties entered into the FSA
before Leonard Cruse was suspended or disbarred.  Cruse also argues that he
satisfies the second requirement because O=Quinn failed to
demonstrate that Cruse had not performed all of the legal work required of him
before he was suspended on May 31, 2005.  Because the first requirement is not
at issue, we need only address Cruse=s arguments
concerning this second requirement.








To support its claim that Cruse had not completed all of
its legal work before Leonard Cruse was suspended on May 31, 2005, O=Quinn submitted
the affidavit of Treena Morgan, the accounting supervisor for the O=Quinn law firm. 
Ms. Morgan averred that she was Afamiliar with the
cases and/or matters subject to the [FSA]@ and she was Aalso familiar with
the date that each of these cases and/or matters settled or otherwise became
finally resolved.@  Attached to Ms. Morgan=s affidavit was a Acomplete list of
those cases and/or matters, subject to the [FSA] that settled or finally
resolved on or after May 31, 2005.@  The list
included the cause number, style, court, and settlement date for each of
nineteen cases or matters.

Cruse contends that O=Quinn=s summary-judgment
proof failed to include for each case the settlement amount, the sum paid to
the client, the sum paid to O=Quinn in fees and expenses, any sum paid
to Cruse in fees and expenses, or the case=s classification
as provided in the FSA.[5] 
Further, Cruse argues that because the FSA provided that it terminated upon
Cruse=s inability to
practice law, the agreement was terminated when Leonard Cruse was suspended on
May 31, 2005; Cruse therefore had no tasks to complete after that date and so
should have been paid as contemplated in the agreement.  Further, Cruse
contends that O=Quinn provided no summary-judgment
evidence that Cruse failed to amend the power of attorney on each case to
secure client consent to O=Quinn=s participation
and fee sharing, and to amend the pleadings in each case to add O=Quinn as an
attorney, as Cruse was obligated to do under the FSA. 








However, Cruse fails to explain why any of the detailed
information about fees and expenses would be relevant.  Under Cruse=s own theory, the
only relevant factor was whether or not Cruse had fully performed the work
required of him before the suspension/disbarment occurred.  Cruse=s other arguments
are controverted by the plain language of the FSA, which expressly contemplated
that the parties would at all times provide joint responsibility for the
representation of their clients.  Indeed, under the articles assigning the
parties= duties for each
category of cases, the parties agreed to assume Ajoint
responsibility for the representation as provided in DR 1.04@ for each category
of cases, regardless of a case=s classification or the level of
responsibility assigned.  Thus, contrary to its argument, Cruse=s responsibilities
were not limited to obtaining amended powers of attorney and amending pleadings
to add O=Quinn.  Again, as
noted above, the relevant inquiry is not whether Cruse had completed some of
its duties on the cases subject to the FSA on the date Leonard Cruse was
suspended; it is whether or not Cruse had completed all of its duties on those
cases.  See Lee, 812 S.W.2d at 363 (holding that lawyer who performed
all that was required of him prior to his resignation or disbarment under
client-approved referral fee contract entitled to attorney=s fees).  Once
Leonard Cruse was prohibited from practicing law, he could not maintain joint
responsibility for those cases that had not been concluded by that date. 

As for Leonard Cruse=s suggestion that
he completed all his tasks when the agreement terminated upon his suspension,
and so he had no tasks to completeCand therefore
satisfied the second requirement of Lee and A.W. Wright &
Associates, P.C.Cnothing in the FSA supports this
interpretation.  Cruse=s interpretation of the FSA is directly
contrary to the long-standing precedent in Texas, discussed above, that when a
lawyer is unable to fulfill his or her representation of a client, the lawyer
is not entitled to recovery of any legal fees from an abandoned case and
client.  See Royden, 331 S.W.2d at 209; Lee, 812 S.W.2d at 3634. 
It is also contrary to the disciplinary rule governing the payment of legal
fees to non-lawyers, which prohibits a lawyer from sharing in legal fees with a
non-lawyer.  See Tex. Disciplinary R. Prof=l Conduct 5.04(a)
(AA lawyer or law
firm shall not share or promise to share legal fees with a non-lawyer . . . .@). 








Cruse also argues that, under the FSA, O=Quinn had the
primary responsibility for certain categories of cases, and provided no
summary-judgment evidence that any of the duties ostensibly assigned to Cruse
under the FSA had not been completed before May 31, 2005.  Cruse points to the
FSA=s provisions that,
for certain cases categorized as AClass I@ or AClass II@ (indicating a
probable settlement value of Amore than $500,000@ and A$50,000 B $500.000@ respectively), O=Quinn was to be Ain charge of
settlement, trial and preparation for settlement or trial,@ while Cruse was
to be responsible for other tasks such as handling Apaper discovery,@ Ahearings and/or
trials@ in any
Galveston-filed case, and Aless onerous depositions@ in any
Galveston-filed case.[6]









Cruse cites as support for this argument A.W. Wright
& Associates, P.C. v. Glover, Anderson, Chandler & Uzick L.L.P, 993
S.W.2d at 466.  In that case, the appellant, Wright & Associates, was the
successor to a law firm whose principal, Joseph Weiss, had been disbarred.  Id.
at 467.  After Weiss was disbarred, Glover Anderson obtained a summary judgment
declaring that portions of the referral agreements between it and A.W. Wright
& Associates were void on the grounds that Weiss was unable to perform the
day-to-day handling of cases as contemplated under the agreements; as a result,
Glover Anderson was relieved of its contractual obligation to share attorney=s fees with
Weiss.  Id. at 468.  In its summary-judgment motion, Glover Anderson
relied in part on language in the referral contracts which recited that Athe day to day
handling of the above referenced case will be handled by Frances Cisneros and
Belinda Gonzales in our office@ to show that Weiss had not yet finished his
legal work for the clients at the time of the referral.  In response, Weiss
argued that all legal work on the referral contracts was completed at the time
of the referral to Glover Anderson, and the description of activities Glover
Anderson relied on referred only to administrative matters.  Id. at 469B70.  This court
found the language of the referral agreements ambiguous, and so reversed Glover
Anderson=s summary
judgment.  Id. at 470B71.

However, Cruse neither contends that the duties assigned
under the FSA are ambiguous nor that the tasks Cruse was responsible for under
the FSA were merely Aadministrative matters@ and not legal
work.  Further, Cruse overlooks the FSA=s additional
requirement that, as to the Class I and Class II cases, both parties were
obligated to assume Ajoint responsibility for the
representation as provided in DR 1.04.@  Under the
version of DR 1.04 in effect at the time the FSA was executed, an agreement to
split fees between lawyers not in the same firm could be made only if the
division was, among other things:

$                  
in proportion
to the professional services;

$                  
made with a
forwarding lawyer; or 

$                  
made,
by written agreement with the client, with a lawyer who assumes joint
responsibility for the representation . . . .








See Tex. Disciplinary
R. Prof=l Conduct
1.04(f)(i)B(iii) (adopted by order of Oct. 17, 1989, effective
Jan. 1, 1990, amended by order of Jan. 28, 2005, effective Mar. 1, 2005, and
reprinted in Tex. Gov=t Code Ann, tit. 2, subtit. G app. A
(Vernon Supp. 2006)) (Aformer Rule 1.04@).[7] 
Thus, the former DR 1.04 expressly distinguished between a Aforwarding lawyer@ and one who
assumed joint responsibility for the representation.  In this case, it is
evident that the FSA obligated each party to assume joint responsibility for
the representation.  Indeed, compliance with DR 1.04 or the assumption of joint
responsibility as provided in DR 1.04 is referenced seven times throughout the
FSA.  Nowhere in the FSA is Leonard Cruse described as a forwarding lawyer, nor
does the FSA include any language indicating that the parties contemplated such
a relationship.  Therefore, unlike in A.W. Wright & Associates,
under the plain language of the FSA, Leonard Cruse could not be considered a Aforwarding lawyer@ whose contractual
duties arguably could have been completed merely by making the referral with
the client=s consent.  See id. at 470B71 (citing former
DR 1.04 and reversing summary judgment for Glover Anderson because referral
agreements were ambiguous concerning the true intent of the parties). 
Accordingly, A.W. Wright & Associates is distinguishable from this
case.

Finally, Cruse contends that O=Quinn improperly
relied on Disciplinary Rules 1.04 and 5.04 to argue that the FSA was void as
contrary to public policy.  Specifically, Cruse argues that the disciplinary
rules are not to be used in civil proceedings outside of the Aattorney
disciplinary@ arena, and cites as support Wright v. Sydow,
173 S.W.3d 534 (Tex. App.CHouston [14th Dist.] 2004, pet. denied),
and Cuyler v. Minns, 60 S.W.3d 209 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied).  Cruse also argues that the disciplinary rules are
not appropriate to establish public policy in this case and that O=Quinn has provided
no summary-judgment proof to support its public-policy argument.  We again
disagree.








In both Wright and Cuyler, this court
recognized that the disciplinary rules do not give rise to a private cause of
action.  See Wright, 173 S.W.3d at 549 (AA violation of the
Disciplinary Rules does not necessarily establish a cause of action, nor does
it void an otherwise valid contract executed outside of the attorney-client
relationship.@); Cuyler, 60 S.W.3d at 214 (AThe Rules by the
terms will not support a claim of negligence per se, nor do they give rise to a
private cause of action.@).  But, as Cruse acknowledges, a court
may deem these rules to be an expression of public policy, so that a contract
violating them is unenforceable as against public policy.  Dardas v.
Fleming, Hovenkamp & Grayson, P.C., 194 S.W.3d 603, 613 (Tex. App.CHouston [14th
Dist.] 2006, pet. denied); Bond v. Crill, 906 S.W.2d 103, 106 (Tex. App.CDallas 1995, no
writ); Polland & Cook v. Lehmann, 832 S.W.2d 729, 736 (Tex. App.CHouston [1st
Dist.] 1992, writ denied).  Thus, if the FSA has not been performed in
accordance with the requisites set forth in the disciplinary rules, O=Quinn=s performance may
be excused as against public policy.  See Polland & Cook, 832 S.W.2d
at 736.

In its motion for partial summary judgment, O=Quinn did not seek
to assert a cause of action against Cruse based on a violation of the
disciplinary rules.  Instead, O=Quinn relied on Disciplinary Rules 1.04
and 5.04 as additional support for its defenses of illegality and invalidity on
public-policy grounds, asserting that these rules expressly prohibit payment of
legal fees to Cruse for cases in which Cruse had not completed all legal
services before Leonard Cruse was suspended and then disbarred.  We agree with
O=Quinn that the
disciplinary rules are consistent with Texas law as expressed in Royden,
331 S.W.2d at 209, and Lee, 812 S.W.2d at 364.  Therefore, in
this case, we conclude that we may consider them as an expression of the public
policy of this state.  See Dardas, 194 S.W.3d at 613 (recognizing that
courts have used the disciplinary rules as a measure of public policy). 








Below and on appeal, O=Quinn contends
that an interpretation of the FSA that would allow Cruse to recover attorney=s fees on those
cases subject to the FSA which were not fully and finally resolved prior to
Leonard Cruse=s suspension and ultimate disbarment would render the
FSA illegal and void as against Texas law and Texas public policy as expressed
in the disciplinary rules.  It has long been recognized that A>[a] contract to do
a thing which cannot be performed without violation of the law= violates public
policy and is void.@  In re Kasschau, 11 S.W.3d 305,
312 (Tex. App.CHouston [14th Dist.] 1999, orig. proceeding) (quoting Lewis
v. Davis, 145 Tex. 468, 199 S.W.2d 146, 148B49 (1947)).  The
rationale behind this rule is not to protect or punish either party to the
contract, but to benefit and protect the public.  Id.  Courts will not
enforce agreements that are illegal and void.  See., e.g., Miller v.
Long-Bell Lumber Co., 148 Tex. 160, 222 S.W.2d 244, 246 (Tex. 1949)
(recognizing the general principal that Acourts will not
lend their aid in enforcing illegal contracts@); DiFrancesco
v. Houston Gen. Ins. Co., 858 S.W.2d 595, 598 (Tex. App.CTexarkana 1993, no
writ) (AIt is a familiar
law of contracts that an illegal agreement is unenforceable.@).

Accordingly, we hold that O=Quinn carried its
summary-judgment burden to demonstrate as a matter of law that FSA is illegal
and void as against the public policy of Texas as expressed in the case law and
the disciplinary rules discussed above, because Cruse is prohibited from
receiving fees on cases subject to the FSA that were not settled or otherwise
finally resolved before Leonard Cruse was suspended and disbarred.  See,
e.g., Villanueva v. Gonzalez, 123 S.W.3d 461, 466 (Tex. App.CSan Antonio 2003,
no pet.) (holding that an agreement to split fees between an attorney and a
person not either licensed as a bail bond surety or as an attorney was
illegal); Plumlee v. Paddock, 832 S.W.2d 757, 760 (Tex. App.CFort Worth 1992,
writ denied) (affirming summary judgment against non-lawyer on alleged referral
contract as illegal and void as against public policy).

b.       Cruse
failed to present summary-judgment evidence establishing a genuine issue of
material fact.

Having determined that O=Quinn satisfied
its summary-judgment burden, we next turn to Cruse=s contention that
it presented evidence raising a conflict.  Specifically, Cruse points to the
following statements in Leonard Cruse=s affidavit
submitted in response to O=Quinn=s motion: 

$                  
AI completed all work that
was required of me under the Fee Sharing Agreement and therefore expected to
receive my fee.@ (emphasis in original) 








$                  
AMy involvement was
all at the beginning of the suit.  All this had been completed by the time the
cases were taken over by the Defendants and only their work was left to be
completed.@

According
to Cruse, O=Quinn=s objection below that this testimony was
conclusory was waived because O=Quinn did not secure a written ruling on
its objection, and the trial court implicitly overruled the objection because
it stated in its order that it considered Cruse=s response in
granting O=Quinn=s motion.  Moreover, Cruse contends that
the testimony Adoes not contemplate a factual conclusion, but is
simply a succinct statement of pure fact as to whether or not he had completed
legal work on the 200 some-odd cases he had assigned to O=Quinn@ under the FSA,
and was Asimply a shorthand
rendition of fact about his completion of the work required of him.@  Again, we
disagree.

Initially, we need not determine whether O=Quinn waived its
objection that Leonard Cruse=s testimony was conclusory or whether the
trial court implicitly overruled O=Quinn=s objection.  An
objection that statements in an affidavit are conclusory is one that relates to
a defect in substance and so may be raised for the first time on appeal.  See
Hou-Tex., Inc. v. Landmark Graphics, 26 S.W.3d 103, 112 (Tex. App.CHouston [14th
Dist] 2000, no pet).








Therefore, we will examine the testimony to determine
whether it was conclusory or whether, as Cruse argues, it was merely a
shorthand rendition of fact.[8] 
As discussed at length, the FSA expressly contemplated that the parties would
provide joint representation on all of the cases subject to the agreement. 
Also, as noted above, O=Quinn=s summary-judgment
evidence included a list of cases or matters that were not settled or otherwise
finally resolved by the date Leonard Cruse was suspended.  We conclude that
Leonard Cruse=s statements in response to this evidence are
conclusory, because he simply states that he completed all of his legal work
and so expected to be paid, and that all of his work occurred at the beginning
of the cases.  He does not identify what legal work he presumably completed at
the beginning of all of his cases or explain how this was compatible with the
FSA=s express
requirement of joint representation.  He also does not identify what work
remained to be done by O=Quinn only or explain why he would not be
jointly responsible for such work.  Mr. Cruse does not even address the
specific cases identified in O=Quinn=s summary-judgment
evidence; he merely asserts in a blanket fashion that he completed all his work
at the beginning of all his cases and there was no legal work for him to
perform on any of them.  Thus, the statements are conclusory.  

Moreover, the only inference that can be gleaned from Mr.
Cruse=s statements is
that he was acting as a forwarding lawyer, similar to the lawyer in Lee v.
Cherry.  See 812 S.W.2d at 363 (forwarding attorney=s legal duties
ended when he referred case to another lawyer with client=s consent). 
However, we have already determined that the FSA expressly provided for joint
representation, not a mere forwarding relationship; therefore, such an
inference does not raise a fact issue in the context of this case.[9] 









c.       The trial
court did not misapply the summary-judgment standards.

Lastly, Cruse contends that the trial court misapplied the
well-established summary-judgment principles by granting summary judgment
despite O=Quinn=s failure to meet its summary-judgment
burden and the presence of conflicting evidence and inferences.  Cruse further
complains that the trial court erred by misplacing the summary-judgment burden
on Cruse, by indulging in credibility determinations, and by failing to take
Cruse=s evidence as
true.  However, we have determined that the trial court did not err in granting
O=Quinn=s motion for
partial summary judgment; therefore, Cruse=s assertions are
without merit.

Conclusion

We overrule the appellants= issues and affirm
the trial court=s order granting appellees= motion for
partial summary judgment as to appellants= claims under the
fee-sharing agreement.

 

 

 

 

/s/      Jeff Brown

Justice

 

 

 

 

Judgment rendered
and Opinion filed November 25, 2008.

Panel consists of
Chief Justice Hedges and Justices Guzman and Brown.









[1]   On April 13, 2004, Cruse also entered into a
promissory note and a revolving-credit note with the O=Quinn law firm, but these agreements are not at issue
in this appeal.





[2]  The FSA provided that cases were to be categorized
as Class I, II, or III, depending on the potential value assigned to the case. 
Cases were also categorized by venue as AGalveston
County@ (AG@) or ANot Galveston
County@ (ANG@), and by source as ANo Referring Lawyer (originated by Cruse)@ (ANR@) and AThird-Party Referring Lawyer@ (AR@).





[3]  O=Quinn also asserted verified
denials disputing Leonard Cruse=s capacity to sue and to recover in the capacity in which he sued
because he had been disbarred and therefore was prohibited from recovering any
fees on cases which settled after the date he was suspended from the practice
of law.  O=Quinn also asserted that the Cruse
law firm lacked the legal capacity to sue and to recover in the capacity in
which it sued because it had forfeited its right to do business in Texas. 





[4]  The record contains only the first page of the
motion to abate and an exhibit purporting to be a confirmation from the Texas
Secretary of State that the charter or certificate of authority for Cruse and
Associates, P.C., was forfeited on July 8, 2005.  However, Cruse does not
dispute O=Quinn=s
representation that forfeiture resulted from the failure of the Cruse law firm
to pay franchise taxes. 





[5]  Cruse also asserts that AO=Quinn provided
global proof of 19 cases resolved before Cruse=s 5/31/05 suspension@ and contends
that even under O=Quinn=s theory, Cruse
was entitled to be paid on those cases.  Likewise Cruse asserts that AO=Quinn=s list contains no data whatsoever on Cruse=s cases resolved after 5/31/05 and is expressly
limited to cases resolved before the 5/31/05 suspension@ (emphasis in original).  However, Cruse is mistaken. 
As noted above, O=Quinn=s list included
only cases that settled or otherwise resolved on or after May 31, 2005.





[6]  Cruse neglects to mention the following obligation
also listed in the FSA as applicable to Class I and Class II cases:  AAt Cruse=s
option, attend settlement meetings and/or mediations, and planning or strategy
meetings.@  





[7]  Although recognizing that former DR 1.04 was in
effect when the FSA was executed, O=Quinn
argued below and on appeal that, because the FSA expressly required the parties
to Aat all times comply with Rule 1.04,@ the current version of Rule 1.04 is Athe appropriate ethical standard against which the
[FSA] must be measured.@  In relevant part, the revised DR 1.04 eliminates the
category of Aforwarding lawyer,@
thus prohibiting a lawyer from obtaining a referral fee merely for forwarding a
case to another lawyer.  See Tex. Disciplinary R. Prof=l Conduct 1.04(f).  However, in this case, it is
unnecessary for us to determine whether the former or the revised version of DR
1.04 applies, because, as we have explained, given the plain language of the
FSA, Leonard Cruse could not have been a Aforwarding
lawyer@ even under the former DR 1.04.  See Dardas v.
Fleming, Hovenkamp & Grayson, P.C., 194 S.W.3d 603, 615B17 (Tex. App.CHouston
[14th Dist. 2006, pet. denied) (declining to consider whether 2005 amendment to
former DR 1.04 applied or whether it manifested public policy as to a fee
sharing agreement executed in 1998); Polland & Cook v. Lehmann, 832
S.W.2d 729, 735B36 (Tex. App.CHouston
[1st Dist.] 1992, writ denied) (applying predecessor rule to former DR 1.04
even though former DR 1.04 was then in effect, when predecessor rule was in
effect when the agreement at issue was executed).





[8]  In support of the contention that Leonard Cruse=s statements are not conclusory, Cruse cites St.
Paul Cos. v. Chevron U.S.A, Inc., 798 S.W.2d 4 (Tex. App.CHouston [1st Dist.] 1990, writ dism=d), and Murphy v.Galveston County, 788 S.W.2d
938 (Tex. App.CHouston [14th Dist.] 1990, writ denied).  However,
neither case involved statements as threadbare as those offered here.  For
example, in St. Paul the court concluded that the statement A>the contract was in full force and effect on August
15, 1984=@ was not a legal opinion in the context of that case,
but instead was a Ashorthand rendition of a statement that the  contract
. . . had not been terminated by either of the parties.@  798 S.W.2d at 7.  The court acknowledged, however,
that in other contexts it could be considered a legal conclusion.  Id. 
In Murphy, this Court held that a detainee=s statement that a Galveston County official or officer closed a jail
cell door on his hand was not an attempt to interpret the person=s legal status, but could have reflected the detainee=s factual conclusion that the person was a Galveston
officer.  788 S.W.2d at 939.  In the context of this case, however, merely
stating as Afact@ that Cruse had
completed all legal work at the beginning of his cases is not sufficient to
raise a fact issue for the reasons explained in this section of the opinion.





[9]  We also disagree with Cruse=s statement in its reply brief that the testimony created a
conflict because O=Quinn Acandidly admitted@ below that the evidence offered by
the parties was conflicting.  The page of the record Cruse directs us to, which
includes O=Quinn=s objections to Leonard Cruse=s statements above, shows that O=Quinn=s objection was that the affidavit contradicts
itself; in the affidavit, Cruse states that the FSA provided for A>joint sharing= of responsibility,@ but then attests that he had
completed all work required of him and that his involvement occurred at the
beginning of the suit.  O=Quinn also objects that the
testimony is Acontradictory on its face, lacks
credibility, is controverted by the summary judgment evidence . . . and thus
fails to meet the standard for testimony from an interested witness.@  We understand O=Quinn to be complaining that
Leonard Cruse=s statements were internally
contradictory and controverted by the plain language of the FSA; we do not
interpret the objections as an admission that the evidence created a fact
issue.