The ST. PAUL COMPANIES, Appellant,

v.

CHEVRON U.S.A., INC., Appellee.

No. 01–89–00472–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 7, 1990.

Rehearing Denied Oct. 18, 1990.

David S. Lynch, Byron G. Lee, Houston, for appellant.

David L. Martindale, K. Susie Adams, G. Alan Kramer, Houston, for appellee.

Before SAM BASS, COHEN and WARREN, JJ.

## OPINION

WARREN, Justice.

This is an appeal from a summary judgment rendered for Chevron against St. Paul Companies on an insurance policy.

The question involved is whether St. Paul breached its duty to defend and insure Chevron under the terms of a policy issued to Devonian Well Services, Inc.

In October 1979, by written contract, Devonian agreed to perform certain oil well services for Chevron. By its terms, the contract was to continue in effect until terminated by either of the parties. As part of the contract, Devonian agreed:

to protect, defend, indemnify and save [Chevron] harmless from all loss, damage, or expense whether or not such loss, damage, or expense is caused by or results from the sole or concurrent negligence of an agent, employee, or independent contractor of [Chevron].  . . .

To insure itself against the liability it incurred because of the preceeding paragraph, in August 1984, Devonian purchased an insurance policy from St. Paul. Among other things, St. Paul's insurance policy agreed to pay on behalf of Devonian:

all sums which [Devonian] shall become legally obligated to pay as damages because of . . . bodily injury . . . to which this insurance applies . . . and [St. Paul] shall have the right and duty to defend any suit against [Devonian] seeking damages on account of such bodily injury.  . . .

In 1984, an employee of Devonian, Morris Cook, was killed in an oil field accident while working on a Chevron oil well. Cook's parents sued Chevron, in cause number A–72,729, filed in Ector County, Texas. Under the terms of the contract with Devonian, Chevron tendered its defense to Devonian. St. Paul initially assumed the defense of Chevron, but later withdrew. Soon thereafter, Chevron settled the case for $175,000.

Devonian declared bankruptcy after the suit was settled. In consideration of Chevron waiving its right to file a proof of claim in Devonian's bankruptcy proceeding, or, in any manner, attempting to enforce the indemnity clause against Devonian, Devonian agreed to assign any cause of action it had against St. Paul to Chevron. Under the terms of that assignment, Chevron sued St. Paul on April 13, 1988.

Attached to Chevron's original petition were copies of relevant documents including the contract between Devonian and Chevron, the assignment of Devonian's cause of action to Chevron, and correspondence from St. Paul to Chevron, withdrawing its defense in the Cook case. St. Paul answered with a general denial and affirmative defenses, alleging that the suit was barred by various statutes of limitation and the doctrine of laches.

Both parties moved for summary judgment and filed responses to the other party's motion. The court denied St. Paul's motion for summary judgment, and granted Chevron's motion. On January 31, 1989, the court signed the final summary judgment order, and found that St. Paul owed Chevron the sum of $182,712.19, representing the $175,000 settlement paid, plus $7,712.19 in attorney's fees.

In two related points of error, St. Paul argues that: (1) the court erred in granting Chevron's motion for summary judgment because there were genuine issues of material fact; and (2) the court erred in denying its motion for summary judgment, because it had shown that it was entitled to judgment as a matter of law. We will consider both points of error together.

The only exception to the rule that orders denying summary judgments are not appealable is where both parties move for summary judgment, and the court grants one of the motions and overrules the other. *Tobin v. Garcia,* 159 Tex. 58, 64, 316 S.W.2d 396, 400–401 (1958). When both parties file motions for summary judgment, and one is granted and the other overruled, the appellate court may determine all questions presented, including the propriety of the order overruling the losing party's motion. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988); *Teledyne Isotopes, Inc. v. Bravenec,* 640 S.W.2d 387, 389 (Tex.App.— Houston [1st Dist.] 1982, writ ref'd n.r.e.). On appeal, the proper course is for the appellate court to render judgment on the motion that should have been granted. *Buckner Glass & Mirror, Inc. v. T.A. Pritchard Co.,* 697 S.W.2d 712, 714 (Tex. App.—Corpus Christi 1985, no writ).

In *Gibbs v. General Motors Corp.,* 450 S.W.2d 827 (Tex.1970), the supreme court set out the standard of appellate review for summary judgments:

[T]he question on appeal, as well as in the trial court, is not whether the summary judgment proof raises fact issues with reference to the essential elements of a plaintiff's claim or cause of action,

but is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action.

*Id.* at 828.

The rules to be followed by an appellate court in reviewing a summary judgment record are set forth by the supreme court in *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985), as follows:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

3. Every reasonable inference must be indulged in favor of the nonmovants and any doubts resolved in their favor.

The appellate court may consider only the evidence on file before the trial court at the time of the hearing. *Gandara v. Novasad*, 752 S.W.2d 740, 743 (Tex.App.—Corpus Christi 1988, no writ). When both parties move for summary judgment, however, and each produces evidence in support of their motion, the trial court may consider the combined summary judgment evidence in determining whether it is proper to grant one motion and overrule the other. *River Oaks Shopping Center v. Pagan*, 712 S.W.2d 190, 193 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). The same rules should be applied to determine whether either of the motions should be granted.

St. Paul's summary judgment evidence consisted of: (1) Chevron's amended response to St. Paul's request for production and interrogatories; and (2) the affidavit of Ruth Lazson, underwriter for St. Paul, which attests that the copy of St. Paul's policy with Devonian, attached as an exhibit to the affidavit, is a true and correct copy of the policy. Copies of original documents (promissory notes, leases, contracts, etc.)

are acceptable if accompanied by a properly sworn affidavit that the attached documents are "true and correct" copies of the originals. *Republic Nat'l Leasing Corp. v. Schindler*, 717 S.W.2d 606, 607 (Tex.1986); Tex.R.Evid. 902. The appellate record does not include a copy of Chevron's amended response to St. Paul's request for production and interrogatories. When the summary judgment record is incomplete, any omitted documents are presumed to support the trial court's judgment. *Cantu v. Western Fire & Cas. Ins. Co.*, 723 S.W.2d 668 (Tex.1987).

■ The only competent summary judgment evidence offered by St. Paul, then, is the true and correct copy of its insurance policy with Devonian. The policy, by itself, was not enough evidence to enable us to conclude that St. Paul was entitled to judgment as a matter of law. In order to conclude that the court did not err in denying St. Paul's motion for summary judgment, however, we must look not only at the evidence presented by St. Paul, but also at the evidence presented by Chevron. *River Oaks Shopping Center*, 712 S.W.2d at 193.

Chevron's summary judgment evidence consisted of:

1. the affidavit of C. Burton Branstetter, regional counsel for Chevron, which attests to an attached copy of the contract between Devonian and Gulf Oil Corporation [1] (exhibit "A");

2. the affidavit of Mr. Branstetter, which attests to an attached letter, signed by Richard P. McKeel, an attorney with a law firm, stating that his "client" understands it is obligated to defend Gulf (exhibit "B");

3. the affidavit of Mr. Branstetter, which attests to an attached copy of a letter from St. Paul to Gulf, stating that St. Paul is withdrawing its defense (exhibit "C"); and

4. the affidavit of Mr. Branstetter, which attests to an attached copy of the assignment to Chevron of Devonian's cause

---

1. The contract was actually between Devonian and Gulf Oil Corporation, which was subsequently acquired by Chevron. It is undisputed that Chevron is the successor in interest to Gulf.

of action against St. Paul for failure to protect and indemnify Gulf (exhibit "D").

St. Paul objected to the summary judgment evidence presented by Chevron in its response to Chevron's motion for summary judgment, and makes the same objections on appeal. Regarding the affidavit and exhibit "A," St. Paul argues that the statement of Mr. Branstetter that "the contract was in full force and effect on August 15, 1984," constitutes no more than a legal opinion. St. Paul further argues that the affidavit attached to exhibit "A" does not show that Mr. Branstetter had personal knowledge of the facts.

We disagree with St. Paul's contention that the phrase "the contract was in full force and effect on August 15, 1984," constitutes a legal opinion and that the phrase is a conclusion which is insufficient summary judgment evidence. Although the statement could be considered, in certain contexts, to be a legal conclusion, in this case, it is no more than a shorthand rendition of a statement that the contract between Devonian and Chevron dated October 8, 1979 had not been terminated by either of the parties. In fact, it is difficult to think of a phrase used to declare the viability of a contract that could not be considered to be a legal conclusion.

St. Paul argues that the remaining three affidavits of Mr. Branstetter suffer from the same deficiencies. Additionally, it argues that the letter from Mr. McKeel, attached as exhibit "B," constitutes nothing more than hearsay.

We agree that the letter from the law firm does not conclusively show that St. Paul is assuming the defense of Chevron, because there is nothing to prove that McKeel is St. Paul's attorney, or that he is authorized to speak for St. Paul. However, exhibit "C," the letter from St. Paul to Gulf stating that it is withdrawing its defense, is sufficient to show that St. Paul had earlier agreed to defend Gulf.

We are of the opinion that the summary judgment evidence is sufficient to prove Devonian's indemnity contract with Chevron, the insurance contract between Devonian and St. Paul, St. Paul's breach of its insurance contract with Devonian, and the assignment of Devonian's cause of action to Chevron.

However, there is no evidence as to the exact amount paid to Morris Cook's heirs by Chevron, or of the amount of the claim assigned by Devonian to Chevron; therefore, there is no summary judgment proof of the amount of damages sustained. The assignment to Chevron states only that the lawsuit was settled for less than the $300,000 policy limit. For this reason, appellee has not proved the amount of its damages, and the summary judgment must be reversed.

Rule 81(b)(1) of the Texas Rules of Appellate Procedure provides in part that if error affects only a part of the matter in controversy, and such part is clearly separable without unfairness to the parties, the judgment shall be reversed and a new trial ordered only as to that part affected by such error, provided that a separate trial on unliquidated damages alone shall not be ordered if liability issues are contested. We find that rule 81 should be applied in our case because the damages are liquidated and that issue is clearly separable without unfairness to the parties; therefore, we will reverse only as to damages, and affirm the remaining part of the judgment.

That part of the summary judgment awarding Chevron damages of $182,712.19 is reversed and remanded for a new trial on damages only; the remainder of the judgment is affirmed.