Leonard A. CRUSE and Cruse and Associates, P.C., Appellants,

v.

John M. O'QUINN and John M. O'Quinn & Associates, L.L.P., Appellees.

No. 14-08-00103-CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 25, 2008.

Rehearing Overruled Dec. 30, 2008.

---

Robert D. Clements, Jr., Chris Lay, Otto D. Hewitt, III, Alvin, TX, for appellants.

Donald B. McFall, Kenneth Wayne Bullock, Houston, TX, for appellees.

Panel consists of Chief Justice HEDGES and Justices GUZMAN and BROWN.

## OPINION

BROWN, Justice.

In this accelerated, interlocutory appeal, appellants Leonard A. Cruse and Cruse and Associates, P.C. (collectively, "Cruse"), appeal the trial court's grant of appellees' motion for partial summary judgment as to Cruse's claims arising out of a fee-sharing agreement ("FSA"). In their motion, appellees, John M. O'Quinn and John M. O'Quinn & Associates, L.L.P. (collectively, "O'Quinn") asserted the affirmative defense that the FSA was illegal and void because Cruse was prohibited by Texas law from recovering fees under the FSA on cases that were not settled or otherwise finally resolved before Leonard Cruse was suspended from the practice of law and, ultimately, disbarred. Cruse contends that (1) O'Quinn failed to satisfy its summary-judgment burden to prove its affirmative defense, (2) Cruse presented evidence raising a genuine issue of material fact precluding summary judgment, and (3) the trial court misapplied the summary-judgment rules and standards. We affirm.

### Factual and Procedural Background

On April 9, 2004, attorney Leonard Cruse and his law firm, Cruse and Associates, P.C. (the "Cruse law firm"), entered into the FSA with the law firm of John M. O'Quinn & Associates, L.L.P. (the "O'Quinn law firm"). Under the FSA, the parties agreed to provide joint representation and to share legal fees earned on certain of Cruse's cases pending on the effective date of the FSA, as well as on cases Cruse later acquired that he referred to the O'Quinn law firm and that met certain specifications.[1] Each case was to be classified based on the amount in controversy, the venue, and the origin of the case. The duties of each party and the division of fees were determined by a case's classification.

The FSA provided that "the parties intend at all times to comply with Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct (hereinafter 'DR 1.04')." Further, regardless of a case's classification or the duties assigned based on that

1. On April 13, 2004, Cruse also entered into a promissory note and a revolving-credit note with the O'Quinn law firm, but these agreements are not at issue in this appeal.

classification, each party expressly agreed to assume joint responsibility for the representation "as provided in DR 1.04."

The FSA also provided that it would terminate upon the occurrence of any one of several events, including "the disability or inability of Cruse to legally practice law in the State of Texas." It further provided that, in the event of termination, pending cases would continue to be subject to the FSA until they were concluded and all fees and expenses were paid, although Cruse would receive a lesser percentage in some cases:

> B. Once the Agreement terminates all future cases thereafter introduced to and acquired by Cruse shall *not* be subject to this Agreement; provided however, that notwithstanding anything to the contrary contained herein the Cases that were subject to the Agreement as of the effective date of termination shall continue to be subject to the Agreement until the Cases are concluded and all fees and expenses are accounted for and paid.
>
> C. If the Agreement is terminated because of the death or disability of Cruse or the inability of Cruse to legally practice law, all of the Cases filed in Galveston County (*i.e.* the "G" type Cases) shall be treated for the purposes of the division of fees as though they were "NG" type Cases.... [2]

Just over a year after executing the FSA, on May 19, 2005, Leonard Cruse was suspended from the practice of law. On June 10, 2005, Mr. Cruse was disbarred.

In 2006, Leonard Cruse filed suit against John O'Quinn individually, seeking an accounting of referral fees and expenses allegedly due under the FSA, and alleging claims for breach of contract, fraudulent inducement, unjust enrichment, and negligence. Mr. Cruse later amended his petition to add the O'Quinn law firm as a defendant. In a second amended petition, the Cruse law firm was added as a plaintiff, and the plaintiffs added an allegation of alter ego and a claim for punitive damages to the claims previously asserted. O'Quinn answered, asserting general denials and numerous affirmative defenses, including a claim that Cruse's claims under the FSA were barred by the doctrine of illegality and were void as against the public policy of Texas.[3]

In 2007, O'Quinn filed a motion for partial summary judgment as to Cruse's claims under the FSA. Several months later, O'Quinn also filed a motion to abate the proceedings as to the Cruse law firm on the grounds that its corporate existence had been forfeited for failure to pay franchise taxes.[4] The trial court heard oral argument on O'Quinn's motions, and on January 4, 2008, signed an order granting O'Quinn's motion to abate, ordering that

---

**2.** The FSA provided that cases were to be categorized as Class I, II, or III, depending on the potential value assigned to the case. Cases were also categorized by venue as "Galveston County" ("G") or "Not Galveston County" ("NG"), and by source as "No Referring Lawyer (originated by Cruse)" ("NR") and "Third–Party Referring Lawyer" ("R").

**3.** O'Quinn also asserted verified denials disputing Leonard Cruse's capacity to sue and to recover in the capacity in which he sued because he had been disbarred and therefore was prohibited from recovering any fees on cases which settled after the date he was

suspended from the practice of law. O'Quinn also asserted that the Cruse law firm lacked the legal capacity to sue and to recover in the capacity in which it sued because it had forfeited its right to do business in Texas.

**4.** The record contains only the first page of the motion to abate and an exhibit purporting to be a confirmation from the Texas Secretary of State that the charter or certificate of authority for Cruse and Associates, P.C., was forfeited on July 8, 2005. However, Cruse does not dispute O'Quinn's representation that forfeiture resulted from the failure of the Cruse law firm to pay franchise taxes.

the case be abated as to the Cruse law firm until April 14, 2008, at which time the Cruse law firm's pleadings would be dismissed if the firm was not in good standing. The trial court also signed a separate order granting O'Quinn's motion for partial summary judgment on Cruse's claims under the FSA. The court further ordered that this order met the requirements for an appealable, interlocutory order pursuant to Texas Civil Practice and Remedies Code section 51.014(d). *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(d) (Vernon 2008). This appeal followed.

### Analysis of Cruse's Summary Judgment Issues

Cruse contends generally that the trial court erred in granting summary judgment, and specifically argues that (1) O'Quinn failed to satisfy its summary-judgment burden to prove its affirmative defense that the FSA was illegal and void as against Texas public policy, (2) Cruse presented evidence raising a genuine issue of material fact precluding summary judgment, and (3) the trial court misapplied the summary-judgment rules and standards. However, before we reach Cruse's issues, we address O'Quinn's contention in its appellate brief that the Cruse law firm is not a Texas corporation in good standing and is therefore not entitled to seek appellate relief.

### 1. Is the Cruse law firm barred from appealing the trial court's judgment?

■ As a threshold matter, O'Quinn contends that the forfeiture of the Cruse law firm's corporate charter has stripped it of its right to bring this appeal. *See* Tex. Tax.Code Ann. § 171.252 (Vernon 2008) (providing that if the corporate privileges of a corporation are forfeited under this subchapter, "the corporation shall be denied the right to sue or defend in a court of this state."). Cruse does not respond to this contention, and nothing in the record reflects that the Cruse law firm's charter has been revived. And, given that Leonard Cruse is the sole owner of the law firm and he has been disbarred, it is unlikely that the corporation could be revived or its corporate privileges reinstated during the pendency of this appeal.

However, in *Vanscot Concrete Co. v. Bailey,* the Texas Supreme Court held that a corporation that had ceased to exist could nevertheless appeal a trial court's judgment against it. *See* 853 S.W.2d 525, 526–27 (Tex.1993) (per curiam). The court expressly disagreed with the court of appeals's dismissal of Vanscot Concrete's appeal on the grounds that a nonexisting appellant cannot appeal, explaining that "corporations have the same right to have judgments against them revised by the appellate courts as have persons, and that even extinguished corporations are entitled to a hearing before the appellate courts." *Id.* at 526 (citing *Tex. Trunk R. Co. v. Jackson,* 85 Tex. 605, 22 S.W. 1030, 1032 (1893)). Although Vanscot Concrete was a defendant appealing an adverse judgment against it, rather than a plaintiff appealing a summary judgment granted in favor of a defendant, and the specific Tax Code provision O'Quinn cites was not at issue, we conclude that the outcome should be no different here. As the Court broadly stated, "the reasoning for allowing a corporation which has ceased to exist to prosecute an appeal is applicable in any circumstance." *Id.*

Further, even the cases O'Quinn cites in support of its argument recognize that Tax Code section 171.252 does not prevent a corporation that has forfeited its corporate privileges from defending claims against it. *See Mello v. A.M.F. Inc.,* 7 S.W.3d 329 (Tex.App.-Beaumont 1999, pet. denied) (stating that, despite the clear language of section 171.252, "the statute has historically been limited to prohibit defendants from

bringing cross actions, not from merely defending lawsuits"); *Hardwick v. Austin Gallery of Oriental Rugs, Inc.,* 779 S.W.2d 438, 441 (Tex.App.-Austin 1989, writ denied), *superseded on other grounds by statute as stated in Bair Chase Prop. Co., L.L.C. v. S & K Dev. Co., Inc.,* 260 S.W.3d 133 (Tex.App.-Austin 2008, pet. filed) (rejecting contention that section 171.252 is jurisdictional and further noting that a corporate defendant that has failed to pay franchise taxes may nevertheless set up purely passive defenses, its answer may not be stricken, and the corporate defendant may offer evidence that negates a plaintiff's claim). Here, although the Cruse law firm was a plaintiff below, in the procedural posture before us, it is not seeking affirmative relief. Instead, it is appealing a trial court's grant of partial summary judgment against it, much like Vanscot Concrete sought to appeal an adverse judgment following a jury trial.

In this situation, we are guided by the Texas Supreme Court's reasoning in *Vanscot Concrete* that "even extinguished corporations are entitled to a hearing before the appellate courts." *See* 853 S.W.2d at 526. We will therefore address the merits of the Cruse law firm's appeal.

## 2. Standard of review.

■ We review the trial court's grant of summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 156–57 (Tex.2004). To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Aguirre v. Vasquez,* 225 S.W.3d 744, 750 (Tex.App.-Houston [14th Dist.] 2007, no pet.). A defendant moving for summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997); *Shirvanian v. DeFrates,* 161 S.W.3d 102, 106 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Joe,* 145 S.W.3d at 157; *Aguirre,* 225 S.W.3d at 750. We review a summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Wal–Mart Stores, Inc. v. Spates,* 186 S.W.3d 566, 568 (Tex.2006) (per curiam) (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 822–23 (Tex.2005)).

## 3. Did the trial court err in granting partial summary judgment in favor of O'Quinn?

Turning to the merits of Cruse's appeal, we address Cruse's contention that the trial court erred in granting O'Quinn's motion for partial summary judgment, and the specific arguments raised in his brief.

### a. O'Quinn demonstrated that the FSA was illegal and void.

■ First, Cruse contends that O'Quinn failed to demonstrate as a matter of law that the FSA—which O'Quinn drafted—was illegal and void as contrary to public policy. Therefore, Cruse maintains, the burden never shifted to it to raise a fact issue. We disagree.

In the motion for partial summary judgment, O'Quinn pointed out that, under the FSA, the parties agreed to share professional fees and expenses on certain cases in accordance with DR 1.04, with each party assuming joint responsibility for the representation. Because the FSA was conditioned expressly upon Leonard Cruse and the Cruse law firm maintaining their respective capacities to practice law in Texas, O'Quinn contended that Cruse

could not legally collect any fees due under the FSA on any cases that were not settled or that were otherwise unresolved until after Leonard Cruse was suspended and then disbarred.

To support this contention, O'Quinn primarily relied upon the precedent of *Royden v. Ardoin*, 160 Tex. 338, 331 S.W.2d 206 (1960), and *Lee v. Cherry*, 812 S.W.2d 361 (Tex.App.-Houston [14th Dist.] 1991, writ denied). In *Royden*, the Texas Supreme Court held that when an attorney—prior to the completion of his contingent—fee contract—is disbarred or suspended, he is not entitled to collect either on the contract or in quantum meruit for the services, if any, that have been rendered. 331 S.W.2d at 209. The court held that an attorney's disbarment or suspension "is considered tantamount to and to have the same effect as a voluntary abandonment, for the attorney by knowingly and willfully practicing such a course of conduct that would lead to the termination of his right to practice, renders it impossible to complete the work that he engaged to perform." *Id.* In *Lee v. Cherry*, this court held that voluntary abandonment only applies to those situations in which the attorney has not completed the legal services prior to disbarment. *See* 812 S.W.2d at 363. Because Lee, whose only involvement was to refer the case to another lawyer, had completed all of his duties under the referral-fee contract prior to surrendering his law license, the court reversed the summary judgment granted on Cherry's affirmative defense. *Id.* at 363–64.

On appeal, Cruse contends that, under *Lee* and *A.W. Wright & Associates, P.C. v. Glover, Anderson, Chandler & Uzick, L.L.P.*, a fee-sharing agreement is not illegal or void, and an attorney may share in contingency fees with a suspended or disbarred attorney, when (1) the fee-sharing agreement was made before suspension/disbarment, and (2) the suspended/disbarred attorney fully performed the work required of him or her before the suspension/disbarment occurred. *See Lee*, 812 S.W.2d at 363–64; *A.W. Wright & Assocs.*, 993 S.W.2d 466, 468–69 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). Cruse maintains that he has satisfied the first requirement because it is undisputed that the parties entered into the FSA before Leonard Cruse was suspended or disbarred. Cruse also argues that he satisfies the second requirement because O'Quinn failed to demonstrate that Cruse had not performed all of the legal work required of him before he was suspended on May 31, 2005. Because the first requirement is not at issue, we need only address Cruse's arguments concerning this second requirement.

To support its claim that Cruse had not completed all of its legal work before Leonard Cruse was suspended on May 31, 2005, O'Quinn submitted the affidavit of Treena Morgan, the accounting supervisor for the O'Quinn law firm. Ms. Morgan averred that she was "familiar with the cases and/or matters subject to the [FSA]" and she was "also familiar with the date that each of these cases and/or matters settled or otherwise became finally resolved." Attached to Ms. Morgan's affidavit was a "complete list of those cases and/or matters, subject to the [FSA] that settled or finally resolved on or after May 31, 2005." The list included the cause number, style, court, and settlement date for each of nineteen cases or matters.

Cruse contends that O'Quinn's summary-judgment proof failed to include for each case the settlement amount, the sum paid to the client, the sum paid to O'Quinn in fees and expenses, any sum paid to Cruse in fees and expenses, or the case's classification as provided in the FSA.[5] Fur-

---

5. Cruse also asserts that "O'Quinn provided

global proof of 19 cases resolved before

ther, Cruse argues that because the FSA provided that it terminated upon Cruse's inability to practice law, the agreement was terminated when Leonard Cruse was suspended on May 31, 2005; Cruse therefore had no tasks to complete after that date and so should have been paid as contemplated in the agreement. Further, Cruse contends that O'Quinn provided no summary-judgment evidence that Cruse failed to amend the power of attorney on each case to secure client consent to O'Quinn's participation and fee sharing, and to amend the pleadings in each case to add O'Quinn as an attorney, as Cruse was obligated to do under the FSA.

However, Cruse fails to explain why any of the detailed information about fees and expenses would be relevant. Under Cruse's own theory, the only relevant factor was whether or not Cruse had fully performed the work required of him before the suspension/disbarment occurred. Cruse's other arguments are controverted by the plain language of the FSA, which expressly contemplated that the parties would at all times provide joint responsibility for the representation of their clients. Indeed, under the articles assigning the parties' duties for each category of cases, the parties agreed to assume "joint responsibility for the representation as provided in DR 1.04" for each category of cases, regardless of a case's classification or the level of responsibility assigned. Thus, contrary to its argument, Cruse's responsibilities were not limited to obtaining amended powers of attorney and amending pleadings to add O'Quinn. Again, as noted above, the relevant inquiry is not whether Cruse had completed some of its duties on the cases subject to the

FSA on the date Leonard Cruse was suspended; it is whether or not Cruse had completed all of its duties on those cases. *See Lee,* 812 S.W.2d at 363 (holding that lawyer who performed all that was required of him prior to his resignation or disbarment under client-approved referral fee contract entitled to attorney's fees). Once Leonard Cruse was prohibited from practicing law, he could not maintain joint responsibility for those cases that had not been concluded by that date.

As for Leonard Cruse's suggestion that he completed all his tasks when the agreement terminated upon his suspension, and so he had no tasks to complete—and therefore satisfied the second requirement of *Lee* and *A.W. Wright & Associates, P.C.*—nothing in the FSA supports this interpretation. Cruse's interpretation of the FSA is directly contrary to the long-standing precedent in Texas, discussed above, that when a lawyer is unable to fulfill his or her representation of a client, the lawyer is not entitled to recovery of any legal fees from an abandoned case and client. *See Royden,* 331 S.W.2d at 209; *Lee,* 812 S.W.2d at 363–64. It is also contrary to the disciplinary rule governing the payment of legal fees to non-lawyers, which prohibits a lawyer from sharing in legal fees with a non-lawyer. *See* Tex. Disciplinary R. Prof'l Conduct 5.04(a) ("A lawyer or law firm shall not share or promise to share legal fees with a non-lawyer....").

Cruse also argues that, under the FSA, O'Quinn had the primary responsibility for certain categories of cases, and provided no summary-judgment evidence that any of the duties ostensibly assigned to Cruse

---

Cruse's 5/31/05 suspension" and contends that even under O'Quinn's theory, Cruse was entitled to be paid on those cases. Likewise Cruse asserts that "O'Quinn's list contains no data whatsoever on Cruse's cases resolved AFTER 5/31/05 and is EXPRESSLY limited

to cases resolved **before** the 5/31/05 suspension" (emphasis in original). However, Cruse is mistaken. As noted above, O'Quinn's list included only cases that settled or otherwise resolved *on or after* May 31, 2005.

under the FSA had not been completed before May 31, 2005. Cruse points to the FSA's provisions that, for certain cases categorized as "Class I" or "Class II" (indicating a probable settlement value of "more than $500,000" and "$50,000–$500,000" respectively), O'Quinn was to be "in charge of settlement, trial and preparation for settlement or trial," while Cruse was to be responsible for other tasks such as handling "paper discovery," "hearings and/or trials" in any Galveston-filed case, and "less onerous depositions" in any Galveston-filed case.[6]

Cruse cites as support for this argument *A.W. Wright & Associates, P.C. v. Glover, Anderson, Chandler & Uzick L.L.P,* 993 S.W.2d at 466. In that case, the appellant, Wright & Associates, was the successor to a law firm whose principal, Joseph Weiss, had been disbarred. *Id.* at 467. After Weiss was disbarred, Glover Anderson obtained a summary judgment declaring that portions of the referral agreements between it and A.W. Wright & Associates were void on the grounds that Weiss was unable to perform the day-to-day handling of cases as contemplated under the agreements; as a result, Glover Anderson was relieved of its contractual obligation to share attorney's fees with Weiss. *Id.* at 468. In its summary-judgment motion, Glover Anderson relied in part on language in the referral contracts which recited that "the day to day handling of the above referenced case will be handled by Frances Cisneros and Belinda Gonzales in our office" to show that Weiss had not yet finished his legal work for the clients at the time of the referral. In response, Weiss argued that all legal work on the referral contracts was completed at the time of the referral to Glover Anderson, and the description of activities Glover Anderson relied on referred only to administrative matters. *Id.* at 469–70. This court found the language of the referral agreements ambiguous, and so reversed Glover Anderson's summary judgment. *Id.* at 470–71.

However, Cruse neither contends that the duties assigned under the FSA are ambiguous nor that the tasks Cruse was responsible for under the FSA were merely "administrative matters" and not legal work. Further, Cruse overlooks the FSA's additional requirement that, as to the Class I and Class II cases, both parties were obligated to assume "joint responsibility for the representation as provided in DR 1.04." Under the version of DR 1.04 in effect at the time the FSA was executed, an agreement to split fees between lawyers not in the same firm could be made only if the division was, among other things:

- in proportion to the professional services;
- made with a forwarding lawyer; or
- made, by written agreement with the client, with a lawyer who assumes joint responsibility for the representation....

*See* Tex. Disciplinary R. Prof'l Conduct 1.04(f)(i)-(iii) (adopted by order of Oct. 17, 1989, effective Jan. 1, 1990, amended by order of Jan. 28, 2005, effective Mar. 1, 2005, and reprinted in Tex. Gov't Code Ann, tit. 2, subtit. G app. A (Vernon Supp. 2006)) ("former Rule 1.04").[7] Thus, the

---

6. Cruse neglects to mention the following obligation also listed in the FSA as applicable to Class I and Class II cases: "At Cruse's option, attend settlement meetings and/or mediations, and planning or strategy meetings."

7. Although recognizing that former DR 1.04 was in effect when the FSA was executed, O'Quinn argued below and on appeal that, because the FSA expressly required the parties to "at all times comply with Rule 1.04," the current version of Rule 1.04 is "the appropriate ethical standard against which the [FSA] must be measured." In relevant part, the revised DR 1.04 eliminates the category of "forwarding lawyer," thus prohibiting a lawyer from obtaining a referral fee merely for forwarding a case to another lawyer. *See*

former DR 1.04 expressly distinguished between a "forwarding lawyer" and one who assumed joint responsibility for the representation. In this case, it is evident that the FSA obligated each party to assume joint responsibility for the representation. Indeed, compliance with DR 1.04 or the assumption of joint responsibility as provided in DR 1.04 is referenced seven times throughout the FSA. Nowhere in the FSA is Leonard Cruse described as a forwarding lawyer, nor does the FSA include any language indicating that the parties contemplated such a relationship. Therefore, unlike in *A.W. Wright & Associates,* under the plain language of the FSA, Leonard Cruse could not be considered a "forwarding lawyer" whose contractual duties arguably could have been completed merely by making the referral with the client's consent. *See id.* at 470–71 (citing former DR 1.04 and reversing summary judgment for Glover Anderson because referral agreements were ambiguous concerning the true intent of the parties). Accordingly, *A.W. Wright & Associates* is distinguishable from this case.

Finally, Cruse contends that O'Quinn improperly relied on Disciplinary Rules 1.04 and 5.04 to argue that the FSA was void as contrary to public policy. Specifically, Cruse argues that the disciplinary rules are not to be used in civil proceedings outside of the "attorney disciplinary" arena, and cites as support *Wright v. Sydow,* 173 S.W.3d 534 (Tex.App.-Houston [14th Dist.] 2004, pet. denied), and *Cuyler v. Minns,* 60 S.W.3d 209 (Tex.App.-Hous-

ton [14th Dist.] 2001, pet. denied). Cruse also argues that the disciplinary rules are not appropriate to establish public policy in this case and that O'Quinn has provided no summary-judgment proof to support its public-policy argument. We again disagree.

■ In both *Wright* and *Cuyler,* this court recognized that the disciplinary rules do not give rise to a private cause of action. *See Wright,* 173 S.W.3d at 549 ("A violation of the Disciplinary Rules does not necessarily establish a cause of action, nor does it void an otherwise valid contract executed outside of the attorney-client relationship."); *Cuyler,* 60 S.W.3d at 214 ("The Rules by the terms will not support a claim of negligence per se, nor do they give rise to a private cause of action."). But, as Cruse acknowledges, a court may deem these rules to be an expression of public policy, so that a contract violating them is unenforceable as against public policy. *Dardas v. Fleming, Hovenkamp & Grayson, P.C.,* 194 S.W.3d 603, 613 (Tex. App.-Houston [14th Dist.] 2006, pet. denied); *Bond v. Crill,* 906 S.W.2d 103, 106 (Tex.App.-Dallas 1995, no writ); *Polland & Cook v. Lehmann,* 832 S.W.2d 729, 736 (Tex.App.-Houston [1st Dist.] 1992, writ denied). Thus, if the FSA has not been performed in accordance with the requisites set forth in the disciplinary rules, O'Quinn's performance may be excused as against public policy. *See Polland & Cook,* 832 S.W.2d at 736.

Tex. Disciplinary R. Prof'l Conduct 1.04(f). However, in this case, it is unnecessary for us to determine whether the former or the revised version of DR 1.04 applies, because, as we have explained, given the plain language of the FSA, Leonard Cruse could not have been a "forwarding lawyer" even under the former DR 1.04. *See Dardas v. Fleming, Hovenkamp & Grayson, P.C.,* 194 S.W.3d 603, 615–17 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) (declining to consider whether

2005 amendment to former DR 1.04 applied or whether it manifested public policy as to a fee sharing agreement executed in 1998); *Polland & Cook v. Lehmann,* 832 S.W.2d 729, 735–36 (Tex.App.-Houston [1st Dist.] 1992, writ denied) (applying predecessor rule to former DR 1.04 even though former DR 1.04 was then in effect, when predecessor rule was in effect when the agreement at issue was executed).

In its motion for partial summary judgment, O'Quinn did not seek to assert a cause of action against Cruse based on a violation of the disciplinary rules. Instead, O'Quinn relied on Disciplinary Rules 1.04 and 5.04 as additional support for its defenses of illegality and invalidity on public-policy grounds, asserting that these rules expressly prohibit payment of legal fees to Cruse for cases in which Cruse had not completed all legal services before Leonard Cruse was suspended and then disbarred. We agree with O'Quinn that the disciplinary rules are consistent with Texas law as expressed in *Royden,* 331 S.W.2d at 209, and *Lee,* 812 S.W.2d at 364. Therefore, in this case, we conclude that we may consider them as an expression of the public policy of this state. *See Dardas,* 194 S.W.3d at 613 (recognizing that courts have used the disciplinary rules as a measure of public policy).

■ Below and on appeal, O'Quinn contends that an interpretation of the FSA that would allow Cruse to recover attorney's fees on those cases subject to the FSA which were not fully and finally resolved prior to Leonard Cruse's suspension and ultimate disbarment would render the FSA illegal and void as against Texas law and Texas public policy as expressed in the disciplinary rules. It has long been recognized that " '[a] contract to do a thing which cannot be performed without violation of the law' violates public policy and is void." *In re Kasschau,* 11 S.W.3d 305, 312 (Tex.App.-Houston [14th Dist.] 1999, orig. proceeding) (quoting *Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146, 148–49 (1947)). The rationale behind this rule is not to protect or punish either party to the contract, but to benefit and protect the public. *Id.* Courts will not enforce agreements that are illegal and void. *See, e.g., Miller v. Long–Bell Lumber Co.,* 148 Tex. 160, 222 S.W.2d 244, 246 (Tex.1949) (recognizing the general principal that "courts will not lend their aid in enforcing illegal con-

tracts"); *DiFrancesco v. Houston Gen. Ins. Co.,* 858 S.W.2d 595, 598 (Tex.App.-Texarkana 1993, no writ) ("It is a familiar law of contracts that an illegal agreement is unenforceable.").

Accordingly, we hold that O'Quinn carried its summary-judgment burden to demonstrate as a matter of law that FSA is illegal and void as against the public policy of Texas as expressed in the case law and the disciplinary rules discussed above, because Cruse is prohibited from receiving fees on cases subject to the FSA that were not settled or otherwise finally resolved before Leonard Cruse was suspended and disbarred. *See, e.g., Villanueva v. Gonzalez,* 123 S.W.3d 461, 466 (Tex.App.-San Antonio 2003, no pet.) (holding that an agreement to split fees between an attorney and a person not either licensed as a bail bond surety or as an attorney was illegal); *Plumlee v. Paddock,* 832 S.W.2d 757, 760 (Tex.App.-Fort Worth 1992, writ denied) (affirming summary judgment against non-lawyer on alleged referral contract as illegal and void as against public policy).

**b. Cruse failed to present summary-judgment evidence establishing a genuine issue of material fact.**

■ Having determined that O'Quinn satisfied its summary-judgment burden, we next turn to Cruse's contention that it presented evidence raising a conflict. Specifically, Cruse points to the following statements in Leonard Cruse's affidavit submitted in response to O'Quinn's motion:

- "I completed *all* work that was required of me under the Fee Sharing Agreement and therefore expected to receive my fee." (emphasis in original)

- "My involvement was all at the beginning of the suit. All this had been completed by the time the cases were taken over by the Defendants and only their work was left to be completed."

According to Cruse, O'Quinn's objection below that this testimony was conclusory was waived because O'Quinn did not secure a written ruling on its objection, and the trial court implicitly overruled the objection because it stated in its order that it considered Cruse's response in granting O'Quinn's motion. Moreover, Cruse contends that the testimony "does not contemplate a factual conclusion, but is simply a succinct statement of pure fact as to whether or not he had completed legal work on the 200 some-odd cases he had assigned to O'Quinn" under the FSA, and was "simply a shorthand rendition of fact about his completion of the work required of him." Again, we disagree.

■ Initially, we need not determine whether O'Quinn waived its objection that Leonard Cruse's testimony was conclusory or whether the trial court implicitly overruled O'Quinn's objection. An objection that statements in an affidavit are conclusory is one that relates to a defect in substance and so may be raised for the first time on appeal. *See Hou–Tex., Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex.App.-Houston [14th Dist] 2000, no pet.).

Therefore, we will examine the testimony to determine whether it was conclusory or whether, as Cruse argues, it was merely a shorthand rendition of fact.[8] As dis-

cussed at length, the FSA expressly contemplated that the parties would provide joint representation on all of the cases subject to the agreement. Also, as noted above, O'Quinn's summary-judgment evidence included a list of cases or matters that were not settled or otherwise finally resolved by the date Leonard Cruse was suspended. We conclude that Leonard Cruse's statements in response to this evidence are conclusory, because he simply states that he completed all of his legal work and so expected to be paid, and that all of his work occurred at the beginning of the cases. He does not identify what legal work he presumably completed at the beginning of all of his cases or explain how this was compatible with the FSA's express requirement of joint representation. He also does not identify what work remained to be done by O'Quinn only or explain why he would not be jointly responsible for such work. Mr. Cruse does not even address the specific cases identified in O'Quinn's summary-judgment evidence; he merely asserts in a blanket fashion that he completed all his work at the beginning of all his cases and there was no legal work for him to perform on any of them. Thus, the statements are conclusory.

■ Moreover, the only inference that can be gleaned from Mr. Cruse's state-

---

8. In support of the contention that Leonard Cruse's statements are not conclusory, Cruse cites *St. Paul Cos. v. Chevron U.S.A, Inc.*, 798 S.W.2d 4 (Tex.App.-Houston [1st Dist.] 1990, writ dism'd), and *Murphy v. Galveston County*, 788 S.W.2d 938 (Tex. App.-Houston [14th Dist.] 1990, writ denied). However, neither case involved statements as threadbare as those offered here. For example, in *St. Paul* the court concluded that the statement " 'the contract was in full force and effect on August 15, 1984' " was not a legal opinion in the context of that case, but instead was a "shorthand rendition of a statement that the contract . . . had not been terminated by either of the parties." 798 S.W.2d at 7. The court

acknowledged, however, that in other contexts it could be considered a legal conclusion. *Id.* In *Murphy*, this Court held that a detainee's statement that a Galveston County official or officer closed a jail cell door on his hand was not an attempt to interpret the person's legal status, but could have reflected the detainee's factual conclusion that the person was a Galveston officer. 788 S.W.2d at 939. In the context of this case, however, merely stating as "fact" that Cruse had completed all legal work at the beginning of his cases is not sufficient to raise a fact issue for the reasons explained in this section of the opinion.

ments is that he was acting as a forwarding lawyer, similar to the lawyer in *Lee v. Cherry.* *See* 812 S.W.2d at 363 (forwarding attorney's legal duties ended when he referred case to another lawyer with client's consent). However, we have already determined that the FSA expressly provided for joint representation, not a mere forwarding relationship; therefore, such an inference does not raise a fact issue in the context of this case.[9]

### c. The trial court did not misapply the summary-judgment standards.

Lastly, Cruse contends that the trial court misapplied the well-established summary-judgment principles by granting summary judgment despite O'Quinn's failure to meet its summary-judgment burden and the presence of conflicting evidence and inferences. Cruse further complains that the trial court erred by misplacing the summary-judgment burden on Cruse, by indulging in credibility determinations, and by failing to take Cruse's evidence as true. However, we have determined that the trial court did not err in granting O'Quinn's motion for partial summary judgment; therefore, Cruse's assertions are without merit.

### Conclusion

We overrule the appellants' issues and affirm the trial court's order granting appellees' motion for partial summary judg-

ment as to appellants' claims under the fee-sharing agreement.

---

9. We also disagree with Cruse's statement in its reply brief that the testimony created a conflict because O'Quinn "candidly admitted" below that the evidence offered by the parties was conflicting. The page of the record Cruse directs us to, which includes O'Quinn's objections to Leonard Cruse's statements above, shows that O'Quinn's objection was that the affidavit contradicts itself; in the affidavit, Cruse states that the FSA provided for " 'joint sharing' of responsibility," but then attests that he had completed all work required of him and that his involvement oc-

curred at the beginning of the suit. O'Quinn also objects that the testimony is "contradictory on its face, lacks credibility, is controverted by the summary judgment evidence ... and thus fails to meet the standard for testimony from an interested witness." We understand O'Quinn to be complaining that Leonard Cruse's statements were internally contradictory and controverted by the plain language of the FSA; we do not interpret the objections as an admission that the evidence created a fact issue.