**Reversed and Remanded and Memorandum Opinion filed July 6, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00489-CV

---

## ALEJANDRO L. PADUA AND THE PADUA LAW FIRM, PLLC, Appellants

## V.

## JASON A. GIBSON, P.C. D/B/A THE GIBSON LAW FIRM AND JASON A. GIBSON, Appellees

---

### On Appeal from the 129th District Court
### Harris County, Texas
### Trial Court Cause No. 2016-31672

---

### MEMORANDUM OPINION

In this continuing dispute over whether appellants Alejandro L. Padua and the Padua Law Firm, PLLC (Padua parties) were fraudulently or unjustly precluded from receiving a portion of the contingent attorney's fees attributable to a potential client's personal injury award to appellees Jason A. Gibson, P.C. d/b/a The Gibson Law Firm and Jason A. Gibson (Gibson parties), appellants challenge

the trial court's rendition of final summary judgment.[1] The Padua parties raise five issues on appeal but primarily argue the trial court erred by rendering summary judgment on their tort claims on the grounds the contingency-fee agreement was unenforceable because it did not comply with the requirements of the Texas Disciplinary Rules of Professional Conduct. We conclude the trial court erred, reverse the judgment of the trial court, and remand for further proceedings.

## I.    BACKGROUND

The Gibson parties represented Josefina Garcia and Orbelinda Herrera in a wrongful death lawsuit for the death of Angel Garcia (Garcia case).[2] The Gibson parties and Padua parties had previously worked together on cases in which the client spoke Spanish and required translation assistance. In those cases, the Padua parties associated into the case by signing a joint representation agreement with the client and received a percentage of the attorney's fees.

In December 2013, Alejandro accompanied Jason on a trip to Dallas. Jason alleges that he never intended the Padua parties to be part of the Garcia case, but Jason brought Alejandro to a meeting with the clients after Alejandro offered to provide translation services. The Gibson parties filed the Garcia case later that month.

Jason, in an affidavit, stated that several months later Alejandro approached him about working together on the Garcia case. In Jason's version of the events, the Gibson parties created an internal draft of a joint-representation letter, but it was never finalized, or sent to the Padua parties, because Jason did not believe the

---

[1] When referring to the lawyers individually, we refer to them by their first names "Alejandro" and "Jason" respectively.

[2] Josefina Garcia is the mother of Angel Garcia. Orbelinda Herrera was the next friend of Ashley and Bryan Garcia-Herrera, the minor children of Angel Garcia.

clients would benefit from the Padua parties' representation. Jason further stated that the Padua parties received a copy of the letter by requesting the draft from an employee of the Gibson Law Firm, who provided the draft without his approval. The Gibson parties maintain that the Padua parties performed no work on the case and were never identified in any pleadings.

Alejandro's version of the events is that he met with the clients with the intention that he would also be representing the family in the Garcia case. In his affidavit, he claimed the clients were aware of, and in agreement with, his joint representation of their claims. Alejandro asserts the Gibson parties prepared a letter of joint representation, which was signed by both lawyers. The Padua parties maintain that Jason assured Alejandro that he would have the clients sign the joint-representation letter. The joint-representation letter, dated April 2014, provides that the Padua parties would receive 20% of the net attorney's fees if recovery was made on behalf of Orbelinda Herrera and 10% of the net attorney's fees if recovery was made on behalf of Josefina Garcia. The Padua parties allege the Gibson parties never intended to present the joint-representation letter to the clients in an effort to prevent the Padua parties from receiving any fees. Alejandro further asserts that the Padua parties were involved in the case answering client questions, assisting with written discovery and attending parts of trial. In his affidavit, Alejandro describes sitting with and explaining the trial proceedings to the clients and their family.

The Garcia case was tried before a jury in 2016 and the jury awarded $53 million in damages.[3] After the jury verdict, the Padua parties asserted a claim to the fees, which claim the Gibson parties denied. When communication between the

---

[3] Based on the Padua parties' understanding, the clients had settled with two of the defendants before trial.

Padua parties and Gibson parties broke down over fees, the Padua parties filed suit in May 2016 stating "claims" for (1)(a) breach of fiduciary duty, (b) fraud and/or fraud by nondisclosure, (c) unjust enrichment, and (d) quantum meruit; (2) requesting an accounting; (3) pleading the discovery rule and fraudulent concealment as defenses to limitations; and (4) requesting "damages" of (a) actual damages, (b) exemplary damages, (c) constructive trust, (d) profit disgorgement, and (e) equitable reformation; (5) and requesting disclosure.

The Gibson parties immediately moved for partial summary judgment, which was granted in February 2017, leaving unresolved the Padua parties' claim of quantum meruit. At the Gibson parties' request, in March 2017, the trial court severed the quantum-meruit claims from the remainder of the Padua parties' claims to bring the claims closer to final resolution. The trial court signed an order severing the quantum-meruit claims and purporting to render final judgment as to the Padua parties' claims for breach of fiduciary duty, fraud, fraud by nondisclosure, and unjust enrichment. The Padua parties then appealed to this court. *See Padua v. Jason A. Gibson, P.C.,* 608 S.W.3d 842 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

At oral argument in 2018, this court raised questions about finality. The case was abated and remanded to allow the parties an opportunity to address the Padua parties' outstanding claim for an accounting. *Id*. at 844. As a result, the trial court signed a new order in July 2018 severing both the quantum-meruit and accounting claims from the Padua parties' tort claims. *Id*. at 844–45. However, on appellate review, we concluded there was still no final judgment because the Gibson parties' traditional summary judgment did not address the Padua parties' claims for disgorgement and constructive trust. *Id*. at 845. We dismissed the appeal for want of subject-matter jurisdiction. *Id*. at 846.

4

After the case returned to the trial court, the Padua parties requested the trial court reconsider its 2016 rendition of summary judgment because new evidence was available. The new evidence was an affidavit from Josefina Garcia, contradicting her prior summary-judgment affidavit, stating that the Padua parties had always represented her and that she consented to the Padua parties' representation of her claim. She further explained that she was pressured by the Gibson parties to sign the prior summary-judgment affidavit.

After the trial court refused reconsideration of its prior summary-judgment ruling, the Gibson parties filed a traditional motion for summary judgment as to the Padua parties' remaining claims. The court granted the Gibson Parties' motion and signed a final judgment.[4] The Padua parties again appeal.

## II. ANALYSIS

The Padua parties raise the following five issues on appeal: (1) the trial court erred in rendering summary judgment because noncompliance with Texas Disciplinary Rule of Professional Conduct 1.04[5] does not bar the Padua parties' tort claims as a matter of law; (2) the trial court erred in rendering summary

---

[4] The final judgment contains the following unequivocal "finality" language: "This is a final judgment; it disposes of all claims and parties and is appealable." *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192–93, 200 (Tex. 2001).

[5] Texas Disciplinary Rule of Professional Conduct 1.04 provides that when a fee is to be split between lawyers in different law firms the client must consent in writing to the terms of the arrangement before the time of the association including the following information:

> (i) the identity of all lawyers or law firms who will participate in the fee-sharing agreement, and (ii) whether fees will be divided based on the proportion of services performed or by lawyers agreeing to assume joint responsibility for the representation, and (iii) the share of the fee that each lawyer or law firm will receive or, if the division is based on the proportion of services performed, the basis on which the division will be made.

Tex. Disciplinary R. Prof'l Conduct 1.04 (Tex. State Bar R. art. X, § 9). The Government Code similarly requires that a contingent-fee contract for legal services be in writing and signed by the client and any attorney. Tex. Gov't Code Ann. § 82.065(a).

judgment because the Padua parties presented sufficient evidence to raise a genuine issue of material fact on actual damages; (3) the trial court abused its discretion by denying reconsideration based on new evidence; (4) the trial court erred in rendering summary judgment on the Padua parties' claims for equitable remedies; and (5) the trial court abused its discretion by refusing to grant a continuance and compel requested discovery.

## A.    Standard of review

Our review of a summary judgment is de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Because the trial court's summary judgment does not specify the ground or grounds on which it was granted, we uphold the court's judgment if properly supported by any ground asserted in the motion. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Dorsett*, 164 S.W.3d at 661.

A summary judgment is proper if, "except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010). Once the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

## B.    Summary judgment on the Padua parties' tort claims

We begin with issue 1—whether the trial court erred in granting the Gibson

parties' summary-judgment motion on the Padua parties' tort causes of action. On appeal both the Padua parties and Gibson parties devote much of their briefing to the enforceability of the fee-sharing agreement under the Texas Disciplinary Rules of Professional Conduct, despite the fact the Padua parties never pleaded a claim for breach of contract.

In the trial court, the Padua parties pleaded breach of fiduciary duty, fraud, fraud by nondisclosure and unjust enrichment to seek recovery for their financial injury—their inability to recover attorney's fees on the Garcia case. In seeking summary judgment on those claims, the Gibson parties argued the Padua parties were not entitled to damages as a matter of law because the fee-sharing agreement was void as against public policy.[6] However, the Gibson parties did not brief or attempt to disprove any other element of the Padua parties' claims other than damages.[7] Counsel for the Gibson parties explained their legal position as follows at the summary-judgment hearing: "the reason those tort claims can't exist is because the [damages] elements are indistinguishable from the breach of contract

---

[6] In determining public policy, Texas courts look first to the Government Code, but if there is not a statute on point to determine public policy on a particular topic, then courts may look to the Texas Disciplinary Rules of Professional Conduct. *See Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 503 (Tex. 2015). Texas courts have held that a fee-sharing agreement must be signed by a client to be enforceable as a matter of public policy. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 205 (Tex. 2002) (concluding in judicial dictum that agreement to share contingency fee between lawyers not in same firm violates public policy unless client-consent requirements of Rule 1.04(f) are satisfied); *Cruse v. O'Quinn*, 273 S.W.3d 766, 775–76 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (deeming Rule 1.04 to be expression of public policy and holding that fee-sharing agreement was void as against public policy as expressed in this Rule 1.04); *Dickens v. Jason C. Webster, P.C.*, No. 05-17-00423-CV, 2018 WL 6839568, at *12–13 (Tex. App.—Dallas Dec. 31, 2018, no pet.) (deeming subsections (f) and (g) of Rule 1.04 to be expression of public policy, and holding that fee-sharing agreement violated public policy because there was no written client consent under Rule 1.04(f)(2) before association or referral) (mem. op.).

[7] Although the title of the Gibson parties' summary-judgment motion suggests inclusion of a no-evidence motion, only a traditional summary-judgment motion was briefed. Tex. R. Civ. P. 160a(i).

claims." The Padua parties objected in the trial court to rendition of summary judgment on their tort claims because, although their claims related to or stemmed from negotiations of the fee-sharing agreement, the tort claims were ultimately distinct and therefore not precluded by the Texas Disciplinary Rules of Professional Conduct. We begin by analyzing whether the Gibson parties, as movants, met their burden to disprove at least one element of each of the Padua parties' claims for fraud, fraud by nondisclosure, breach of fiduciary duty and unjust enrichment.

### 1.    Fraud

To recover on an action for fraud, a plaintiff must prove that (1) a material representation was made; (2) the representation was false; (3) when the speaker made the representation, the speaker knew it was false or made it recklessly without knowledge of the truth and as a positive assertion; (4) the speaker made it with the intention that it should be acted upon by the party; (5) the party acted in reliance upon it; and (6) the party thereby suffered injury. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (orig. proceeding); *see* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Business • Consumer • Insurance • Employment* PJC 105.2 (2020). The Gibson parties' summary-judgment briefing argued that the Padua parties are prohibited from recovering any contingency fees based on a fee-sharing agreement that was not signed by a client. However, the allegations underlying the Padua parties' fraud claim were that the Gibson parties represented to the Padua parties that they would share in the attorney's fees for the Garcia case and that the Gibson parties would have the clients execute the purported fee-sharing agreement. In fact, the Padua parties allege that it was the fraudulent conduct of the Gibson parties that caused the fee-sharing agreement to remain unsigned by the clients and to be

noncompliant with Texas Disciplinary Rules of Professional Conduct. Therefore, the Padua parties' fraud claim is determined by the conduct of the Gibson parties. Damages for such a claim hinge on whether the Padua parties were injured by reliance on a representation of the Gibson parties. The claim does not hinge on whether the Padua parties are entitled to recover on the existing fee-sharing contract.

Although the Gibson parties acknowledge the Padua parties did not plead a breach-of-contract claim, their summary-judgment motion lacks further discussion of the causes of action pleaded and asserts simply that the Padua parties cannot "plead around the [disciplinary] rules" by making tort claims instead of breach-of-contract claims. Because the Gibson parties' summary-judgment motion presented no grounds to the trial court that disproved any element of the Padua parties' fraud claim, the trial court erred by rendering summary judgment on that claim. Tex. R. Civ. P. 166a(c) ("The motion for summary judgment shall state the specific grounds therefor.").

### 2. Fraud by nondisclosure

Fraud by nondisclosure, a subcategory of fraud, occurs when a party has a duty to disclose certain information and fails to disclose it. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). To establish fraud by nondisclosure, the plaintiff must show: (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the nondisclosure, which resulted in injury. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019); *see* Comm. on

Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Business • Consumer • Insurance • Employment* PJC 105.4 (2020).

The Padua parties alleged the Gibson parties concealed from them that the fee-sharing agreement was not signed by the clients and that the Gibson parties did not intend to seek signature of the clients. Jason admitted in his affidavit that he instructed his staff to draft a fee-sharing agreement pursuant to a discussion he had with Alejandro. Although Jason denied the agreement was ever formally sent to the Padua parties, his affidavit concedes he did not submit the fee-sharing agreement to the clients for signature because he believed the clients would not benefit from the association.

The Gibson parties, as movants, attempted to disprove the Padua parties' damages as a matter of law. Again, their argument was that the Padua parties suffered no injury because they were not entitled to enforce the fee-sharing agreement. However, whether the fee-sharing agreement, unsigned by clients, was legally unenforceable has no legal significance as to whether the Padua parties were injured by any alleged fraudulent concealment. Because the Gibson Parties' summary-judgment motion presented no grounds to the trial court that disproved any element of the Padua parties' fraud-by-nondisclosure claim, the trial court erred by rendering summary judgment on that claim.

### 3.      Breach of fiduciary duty

To recover on a breach-of-fiduciary-duty claim, a plaintiff must prove that (1) a fiduciary relationship existed between the plaintiff and the defendant, (2) the defendant breached his or her fiduciary duty to the plaintiff, and (3) the defendant's breach resulted in an injury to the plaintiff or a benefit to the defendant. *Adam v. Marcos*, 620 S.W.3d 488, 507 (Tex. App.—Houston [14th Dist.] 2021, pet. denied). In the trial court, the Padua parties pleaded the

10

fee-sharing agreement created a joint venture between the parties. Relying on a concurrence in *Bohatch v. Butler & Binion*, the Padua parties asserted they were owed a fiduciary duty by the Gibson parties because of the joint venture. 977 S.W.2d 543, 550 (Tex. 1998) (Hecht, J., concurring) (relationship between joint venturers is fiduciary in character).

As discussed above with the Padua parties' other claims, the Gibson parties relied on the alleged unenforceability of the fee-sharing agreement to defeat the breach-of-fiduciary-duty claim. However, the relevant factual and legal matters are whether the Gibson parties owed a fiduciary duty to the Padua parties and breached this duty, causing injury to the Padua parties. The enforceability of the fee-sharing agreement is not relevant to any element of this claim. Because the Gibson parties' summary-judgment motion presented no grounds to the trial court that disproved any element of the Padua parties' breach-of-fiduciary-duty claim, the trial court erred by rendering summary judgment on that claim. Tex. R. Civ. P. 166a(c).

### 4. Unjust enrichment

A party may recover under an unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of undue advantage. *See Southwestern Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 921 (Tex. 2010) (quoting *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)); *see also* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Business • Consumer • Insurance • Employment* PJC 101.44 (2020). Because unjust enrichment is quasi-contractual, it may not be submitted to the jury "when a valid, express contract covers the subject matter of the parties' dispute." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (citing *TransAmerican Nat. Gas Corp. v. Finkelstein*, 933 S.W.2d 591, 600 (Tex. App.— San Antonio 1996, writ denied)) (no recovery for unjust enrichment if same subject

is covered by express contract).

Despite their position that there was no express, enforceable agreement entitling the Padua parties to attorney's fees, the Gibson parties presented no summary-judgment grounds (other than *contractual* grounds) defeating the Padua parties' claim for unjust enrichment. Therefore, it was error for the trial court to render summary judgment on the Padua parties' unjust-enrichment claim. Tex. R. Civ. P. 166a(c).

We sustain issue 1. Having concluded the trial court erred in rendering summary judgment on the Padua parties' tort claims, we need not reach issue 2 (whether the trial court erred in rendering summary judgment because the Padua parties presented sufficient evidence to raise a genuine issue of material fact on actual damages), issue 3 (whether the trial court erred by not reconsidering its summary-judgment ruling), or issue 5 (whether the trial court erred by implicitly denying the Padua parties' motion for continuance and motion to compel discovery by rendering summary judgment). Tex. R. App. P. 47.1.

## C.    Summary judgment on the Padua parties' equitable claims

In their "Traditional Motion for Summary Judgment as to Equitable Remedies," the Gibson parties argue the Padua parties' claims for disgorgement and constructive trust must be dismissed as a matter of law on the grounds that the tort causes of action to which they were related had already been dismissed. Because the trial court erroneously dismissed the Padua parties' tort claims, we similarly conclude the trial erred in rendering summary judgment as to the Padua parties' equitable claims.

We sustain issue 4.

### III. CONCLUSION

Having sustained issues 1 and 4, and without reaching issues 2, 3 and 5, we reverse the final judgment of the trial court and remand the case to the trial court for further proceedings.

/s/    Charles A. Spain
Justice

Panel consists of Justices Spain, Poissant, and Wilson.